**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 11, 2017**

# In the Court of Appeals of Georgia

A17A1723. IN RE DILLON.

RAY, Presiding Judge.

After notice and a hearing, the trial court found attorney Trace Dillon in criminal contempt of court after he repeatedly filed several nearly identical petitions for scire facias under the wrong case number, the last of which was filed after the trial court had admonished him not to do so. On appeal, Dillon contends that the evidence was insufficient to support the trial court's finding of criminal contempt. For the reasons that follow, we affirm.[1]

---

[1] We note that the trial court judge, Susan E. Edlein of the State Court of Fulton County, was represented in this appeal by the Office of the County Attorney of Fulton County. As the author of this opinion is unfortunately aware from his personal experience as a Judge of the Superior Court of Gwinnett County, the "judge before whom the alleged contemptuous conduct occurred is not a "party" to the appellate review of a contempt finding." *In re Herring*, 268 Ga. App. 390, (601 SE2d 839) (2004). Accordingly, no appearance should have been made for or brief filed on

"On appeal from a conviction for criminal contempt, we view the evidence in a light favorable to the trial court's ruling." (Footnote omitted.) *Dogan v. Ga. Dept. of Human Resources*, 278 Ga. App. 905, 905 (1) (630 SE2d 140) (2006). The record shows that Dillon conducts a commercial debt collection practice. In 2007, Dillon obtained a judgment in Case No. 06VS103736 in the State Court of Fulton County. After the judgment became dormant, Dillon filed a complaint to revive the dormant judgment in 2014. The revival complaint was designated as Case No. 14VS003116. Dillon subsequently dismissed Case No. 14VS003116 without prejudice in 2015.

*First petition*. On September 21, 2015, Dillon filed a petition for writ of scire facias in Case No. 14VS003116 in an attempt to collect the judgment that he had obtained in Case No. 06VS103736.[2] At the hearing, the trial court denied the petition because Dillon had previously dismissed Case No. 14VS003116 without prejudice. At that time, Dillon became aware that any subsequent petition for writ of scire facias should not be filed in Case No. 14VS003116.

behalf of Judge Edlein. However, we also note that the Appellant did not at any stage file an objection to such participation by or on behalf of Judge Edlein. Had the appellant done so, such objection would have been sustained.

[2] The filing of a petition for writ of scire facias to revive a judgment does not constitute an original action. Rather, it is the continuation of the action in which the judgment was obtained. See OCGA § 9-12-62.

*Second petition*. On June 10, 2016, Dillon filed a second petition for writ of scire facias, again under Case No. 14VS003116. Dillon had reviewed the second petition before signing it, but he apparently failed to notice that the petition bore the wrong case number. The trial court denied the second petition on the same ground as it denied the first petition, finding that "it cannot now consider Plaintiff's Petition for Scire Facias to Revive Dormant Judgment after Plaintiff voluntarily dismissed [Case No. 14VS003116] without prejudice[.]" By this time, Dillon was very much aware that any subsequent petition for writ of scire facias should not be filed in Case No. 14VS003116.

*Third petition*. On or about September 9, 2016, Dillon filed a third petition for writ of scire facias, again under Case No. 14VS003116. Dillon had also reviewed the third petition before signing it, but he apparently failed to notice that the petition bore the wrong case number again. The trial court entered an order denying the third petition on the same ground as it did the previous petitions, writing in part, "[i]f counsel for Plaintiff files a fourth identical [petition], the [c]ourt will refer this matter to the State Bar of Georgia for investigation."

*Fourth petition*. After the trial court's third order, Dillon met with his staff and determined that the software that they used to generate pleadings was automatically

3

inserting 14VS003116 because it was the most recent civil action file number associated with their case file. Accordingly, Dillon claims that he had Case No. 14VS003116 deleted from his software system and instructed his staff to prepare a fourth petition without a case number on it. Inexplicably, he failed to consult with other members of his staff or the Clerk of Court to find out whether he should leave the case number assignment blank or insert 06VS103736, the case number of the original action in which the judgment was obtained. Had Dillon done so, he would have been able to confirm that the filing procedures in Fulton County State Court require petitions for scire facias to be filed in the original action in which the judgment was obtained. After signing the fourth petition without a case number assignment, Dillon had the petition forwarded to his paralegal for filing. However, Dillon failed to provide any instructions to his paralegal regarding the assignment of a case number for the fourth petition. Consequently, the paralegal inserted 14VS003116 as the case number assignment and e-filed the fourth petition in the State Court of Fulton County.

Upon Dillon's filing of the fourth identical petition, the trial court issued an order requiring Dillon to appear before the court and show cause why he should not be held in contempt. After considering the evidence and arguments presented at the

4

contempt proceedings, the trial court found that Dillon voluntarily signed the petitions without ensuring that the proper case number had been assigned to them. Despite the trial court's admonition in its third order, Dillon caused the fourth incorrect petition to be filed, later admitting that he did not do "everything that [he] could have" to prevent the repeated filings of the petition under the wrong case number. Although Dillon explained that the repeated filings were the product of his software system and certain actions on the part of his staff, the trial court found that "[Dillon] knew of the[ ] numerous improper filings in this action and failed to take reasonable remedial action or prospective action[,] . . . [and that] . . . it was Mr. Dillon's obligation, not his non-lawyer staff, to ensure that the pleadings he signed and ordered to be filed did not violate this [c]ourt's prior orders." Accordingly, the trial court found that Dillon's actions or inactions were willful in light of the circumstances, and it found him in contempt of court. This appeal ensued.

In two-related enumerations of error, Dillon contends that the evidence was insufficient to support the finding of contempt. We disagree.

"As OCGA § 15-1-4 (a) (1) clearly contemplates, and as we have previously held, criminal contempt involves some form of wilful disrespect toward the court; it may involve intentional disregard for or disobedience of an order or command of the

5

court, or it may involve conduct which interferes with the court's ability to administer justice." (Punctuation and footnote omitted.) *Moton v. State*, 332 Ga. App. 300, 302 (772 SE2d 393) (2015). A court is authorized to find an attorney, as an officer of the court, in contempt for misbehavior in his or her official transactions or for disregarding an order or command of the court. OCGA § 15-1-4 (a) (2)-(3). Furthermore, "OCGA § 15-1-4 (a) (2) is intended to impose upon officers of the courts engaged in their official transactions a higher duty to the court than is demanded of [others]." (Citations omitted.) *In re Beckstrom*, 295 Ga. App. 179, 182 (2) (671 SE2d 215) (2008). Accordingly, "courts have broader contempt powers in cases of misbehavior of any of the officers of the courts[.]" Id.

Contrary to Dillon's arguments, his actions or inactions were not merely negligent; they were in derogation of his responsibilities and duties as an attorney and officer of the court. According to his testimony, he took initial steps to remedy the discrepancy in the repeated petitions; however, in light of the higher duty imposed upon officers of the court, we believe that Dillon's disregard of his duty to ensure that the problem was alleviated before filing the fourth petition was sufficient to support the finding of contempt.

The facts of this case are analogous to those found in the case of *In re Spruell*, 227 Ga. App. 324 (489 SE2d 48) (1997). *In re Spruell* involved an attorney who agreed on a Thursday evening to represent a client at a DUI trial four days later. At the time he was hired, Spruell knew he was leaving the next morning for vacation in a remote area where he would be unreachable. Although he did file a request for a leave of absence and a motion for continuance in an attempt to alleviate the problem, Spruell left town *without knowing* whether leave had been granted and without making arrangements for someone else to cover the trial if it was not continued. We held that the evidence was sufficient to support a finding of criminal contempt, as a rational fact-finder could infer that "Spruell was wilfully disrespectful when he disregarded the scheduling order and forced the court to revise its schedule to fit his convenience." Id. at 325 (1).

Here, Dillon was aware that he had filed three identical petitions for scire facias with the trial court, and each petition was dismissed due to his failure to utilize the correct case number. The trial court placed Dillon on notice that there would be adverse consequences if he filed a fourth identical petition. Although Dillon took some steps to remedy the discrepancy, he failed to follow through and personally *ensure* that the proper case number was utilized before filing his fourth petition with

7

the trial court. As the trial court correctly noted, Dillon did not do everything he could have to ensure compliance with the trial court's orders and to avoid interfering with the trial court's ability to administer justice. Therefore, we conclude that a rational fact-finder could infer that Dillon willfully disregarded the seriousness of the trial court's admonition in its third order.

*Judgment affirmed. Dillard, C. J., and Self, J., concur*.